PATRICK J. CASSIDY *v.* FRANK H. HARTMAN.

[46 South., 536.]

TAXATION. *Tax titles. Rural lands. Governmental survey descriptions. Private maps. Assessments.*

An assessment of rural lands which abandons the United States governmental survey descriptions of the tract and follows the descriptions of a private unrecorded map, dividing the tract into lots unknown to the governmental survey, without in any way referring to the map, or pointing to the clue by which the descriptions given can be rendered certain, will not support a tax sale; a tax deed predicated thereof will be void, and cannot be aided by subsequently recording the private map.

FROM the chancery court of Lincoln county.

HON. G. GARLAND LYELL, chancellor.

Cassidy, appellant, was complainant in the court below; Hartman, appellee, was defendant there. From a decree in defendant's favor the complainant appealed to the supreme court. The object of the suit was to confirm a tax title to land described as "Lot 17 in S. E. ¼ of S. W. ¼ Sec. 18, Township 7, Range 8 East, in Lincoln County, Mississippi." It appeared on the trial that S. E. ¼ of S. W. ¼ of the section in question was not within any city, town or village, that it was not divided into lots by the United States government surveys, and that there was no public or recorded map, and never had been one, dividing the tract into lots; that a previous owner of the tract, some years before the assessment in question, made a map thereof on which for his own purposes or pleasure he had drawn lines, pretending to divide the tract into lots and had numbered one of them as 17, and that no record whatever was made, or other publicity given, to the map until after the beginning of this suit, when it was placed on record at complainant's instance. The assessment made no reference to the map nor did it in any way point to the evidence which would fix the location of the lot within the tract.

*A. C. & J. W. McNair,* for appellant.

It was contended by counsel for appellee that Lot 17 of S. E. ¼ of S. W. ¼, Section 18, Township 7, Range 8 East was not a designation by governmental survey, and that therefore, it could not be validly assessed and sold by the Warren designation. This land is outside the corporate limits of a municipality, and we do not know of any law which forbids the owner from subdividing the tract into lots and numbering and selling the lots by the number designation. We think there is none.

By Code 1892, § 3774, and Code 1906, § 4283, it is provided, *inter alia,* "If the owner of any land be unknown, it shall be assessed to 'unknown.' Lands not surveyed according to the plan of the government surveys shall be assessed by designation used on the government maps, or by other descriptions or names by which they may be distinguished. And if parts of such lands shall be owned by different persons, such parts shall be referred to by quantity, and such memorandum as may be convenient to show the locality."

By Code 1892, § 3775, and Code 1906, § 4284, a failure to observe the requirements of the last preceding section (§ 3774) shall not vitiate any assessment, if the land be so described as to be identified; and it shall be sufficient identification of land to describe it as the land of ...... (the person owning or claiming it) occupied by........, or that part of (Section or other known division, designating it) owned or claimed by ......, or the lot on which ........ resides or the lot occupied by ;........; or by the name by which it may be known; or by any description which will furnish a sure guide for the ascertainment by parol evidence of the land intended.

Code 1892, § 3776, and Code 1906, § 4285, provide that in assessing land, a description of it as a part of a designated tract or division shall be held to embrace such part as is the subject of separate ownership, a one tract or division, whether owned by one or several jointly; and when parts of a designated tract or division shall be sold for taxes, the sale shall pass the

title of such part as was the subject of such ownership when it was assessed; and a sale of a specified number of acres of a tract shall pass an undivided interest in the whole tract equal to the proportion which the number of acres, or portion sold, bears to the whole tract, etc., * * * and parol testimony shall always be admissible to apply a description of land on the assessment roll or in a conveyance for taxes, where such testimony will show what land was assessed and sold and there is enough in the description on the roll or conveyance to be applied to a particular tract of land by the aid of such testimony. The conveyance shall vest in the purchaser a perfect title to the land for taxes, subject to the right of redemption; and no such conveyance shall be invalidated in any court except by proof that the land was not liable to sale for the taxes, or that the taxes for which the land was sold had been paid before sale. Code 1892, § 3718, Code 1906, § 4332.

By Code 1892, § 3814 (Code 1906, § 4329), it is provided that "Land in cities, towns or villages shall be sold by lots or other subdivisions or descriptions by which it is assessed, etc."

The description, Lot 17 of S. E. ¼ of S. W. ¼, Section 18, Township 7, Range 8 East is not a patent ambiguity. It is certain on the face of the deed and assessment roll, and to render it uncertain you must look beyond the deed and roll. It is said, however, that the court will take judicial knowledge that there is, according to governmental survey no such a lot or description. Grant it so. The revenue laws of this state recognize the legal right of the land owner to divide and sell his land in small parcels or lots, and the sections of the statutes in reference to the assessment, taxing and sale for taxes, were drafted and enacted with full recognition and in view of this right.

The court, speaking through Justice Campbell, along this line, said in *Cogburn* v. *Hunt*, 54 Miss., 676, "That provision of Code 1871, § 1676 (Code 1880, § 490; Code 1892, § 3775; Code 1906, § 4284) which, after directing how the assessor shall arrange lands and lots on the assessment roll, and how he shall

designate them, declares, 'But no failure to observe any of these requirements shall be held to vitiate any assessment, if the land or lot be so described as to be identified,' does not in any way affect the distinction between patent and latent ambiguities, nor relieve against the necessity of so describing the land assessed as to be identified by the assessment. It simply authorizes some other mode of identification than description by range, township and section and subdivisions of sections, or squares, lots and subdivisions."

At the time Warren platted and partited the S. E. ¼ of S. W. ¼ into lots, and sold them, there was no statutory requirement that the map should be filed in the chancery clerk's office. This requirement first appears in the Code of 1892, and was intended only to apply to towns subsequently incorporated, or with additions to towns surveyed and platted after its enactment. *Wellborn* v. *Muller,* 84 Miss., 726, 36 South., 544.

The description of the land as Lot 17 of S. E. ¼ of S. W. ¼ Section 18, Township 7, Range 8 East, in the deed and roll defines its identity and fixes its location. The designation within itself is complete—there is no ambiguity or uncertainty in it. The only question is, is there such a lot as 17 in the designated governmental survey?

At common law, aside from the statute broadening the rule of admission of parol evidence in tax sales, parol testimony is admissible to apply the description in the deed and roll to the land.

Justice Campbell, in his opinion in *Barns* v. *Andrews,* 52 Miss., 596, says "Thus a deed to 'a lot' or to 'the lot' is void, but a deed to a lot set forth in some other paper or proceeding referred to, **or** located in a clearly defined manner, or designated by name or number is good. So also a conveyance of 'my residence' is good, because the fact of ownership and possession is referred to by the use of the possessive pronoun, and the property is susceptible of identification. If it should turn out that I owned more than one residence, then, inasmuch as the uncer-

tainty thereby produced would spring from this extrinsic fact, other extrinsic facts may be adduced to show which residence is intended." We also refer you to the instances given by Justices CAMPBELL and SIMRALL in the same case.

The record and the testimony disclose that for over thirty years the land had been designated, known and dealt with by sundry individuals and the state and county revenue authorities as Lot 17. Warren, the original owner, had the legal right to "dub" it and name it as Lot 17, as much so as if he had called it "Beaver Dam," "White Acre," "Black Acre," "Glencoe" or "Rob Roy;" "What's in a name? That which we call a rose, by any other name would smell as sweet!"

We are well aware that the deed or "roll must furnish the clue which, when followed by the aid of parol testimony conducts certainly to the land intended;" *Dodds* v. *Marks,* 63 Miss., 443. The clue, if such is needed in this case, is S. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, Section 18, Township 7, Range 8 East. Apropos to this, we cannot do better than quote the language of this court in *McQueen* v. *Bush,* 76 Miss., 283, 24 South., 196, where it is said "The reference to Section 34 is as much and as essentially a part of the description as any other part of the description in the assessment, sale, or conveyance." In *Crawford* v. *McLaurin,* 83 Miss., 265, 35 South., 209, 949, it is said, "It will be noted in these cases, the 'starting point' was furnished by the description on the tax roll, and the 'clue' was found in some terms of an accepted legal definition as 'Section' and . . . . . . . 'Township,' or 'Lot' or 'Square,' or the name of the street, found either in a record of governmental survey, or in a municipal survey and map."

The land was assessed and sold as that of an unknown owner —and this, too, under the facts of this case, is a "clue." If we take these "clues" furnished by the deed and roll, and follow them by parol testimony, there is no difficulty in identifying and locating the lot sold. The description is sufficient if the property can be identified by a competent surveyor with reasonable

certainty, either with or without the aid of extrinsic evidence. 25 Am. & Eng. Ency. of Law, 220 (1st ed.); *People* v. *Stahl*, 101 Ill., 346; *Law* v. *People*, 80 Ill., 268; *Fowler* v. *People*, 93 Ill., 115; *Buck* v. *People*, 78 Ill., 460.

Land may be described by the particular name by which it is generally and particularly known in the neighborhood. 25 Am. & Eng. Ency of Law, 222 and authorities cited in note 1; *Raines* v. *Baird*, 84 Miss., 907, 37 South., 458; *Railroad Co.* v. *LeBlanc*, 74 Miss., 650, 21 South., 760.

A description of property to a person by name as "Lot 3" in "Portland Homestead" is sufficiently certain, where there is but one "Portland Homestead" within the county containing such a lot of which the person assessed is the owner. 20 Fed. Rep., 364.

It is not claimed that there is, in the county, other land to which the description can apply, and where such is not the case, there is a latent ambiguity. *Lewis* v. *Seibles*, 65 Miss., 251, 3 South., 652; *Hanna* v. *Renfro*, 32 Miss., 125; *Ladnier* v. *Ladnier*, 75 Miss., 777, 23 South., 430.

The revenue statute, Code 1892, § 3774, Code 1906, § 4283, authorizes the assessor to assess lands not surveyed by the plan of government surveys by the designation used on government maps or by other descriptions or names by which they may be distinguished. The land in controversy was known, designated, and distinguished as Lot 17 and so assessed and sold. Code 1892, § 3775 (Code 1906, § 4284), says explicitly, that it shall be sufficient identification to describe it by the name by which it may be known, or by any description which will furnish a sure guide for the ascertainment, by parol evidence, of the particular land intended. By the next section (Code 1892, § 3776; Code 1906, § 4285) parol testimony shall always be admissible to apply a description of land on the assessment roll, or in a conveyance for taxes, where such testimony will show what land was assessed and sold, and there is enough in the description in the roll or conveyance to be applied to a particular

tract of land by the aid of such testimony. The statutes broaden and enlarge the rule for the admission of parol evidence in tax sale cases.

We think the cases of *Dodds* v. *Marks,* 63 Miss., 443, and *Wheeler* v. *Lynch,* 89 Miss., 157, 42 South., 538, are decisive of this case in appellant's favor. *Price* v. *Ferguson,* 66 Miss., 404, 6 South., 210; *Field* v. *Tucker,* 51 Miss., 191.

*Mayes & Longstreet,* for appellee.

The complainant on the trial of the case introduced a lot of documentary evidence and also verbal testimony of witnesses produced by which he sought to connect this Lot 17 with Warren's map. In that connection we submit two propositions:

1. That this being a patent ambiguity the evidence sought to be introduced was incompetent, and such an ambiguity cannot be helped out; and

2. That the evidence is of and in itself insufficient, even if it had been competent.

On this point that this is a patent ambiguity we will add that this assessment roll did not furnish any clue by which the property might be identified. The entire description contained on the assessment roll is "Lot 17 of the Southwest $\frac{1}{4}$" etc.

It will be observed that it does not say "Lot 17 of Southwest $\frac{1}{4}$, etc., according to subdivision made by Warren, as per his map on file in the chancery clerk's office," etc. Nor does it contain any other terms by which a proposing purchaser would be furnished a reference to identify this lot 17 and know what it is that he is offered at the tax sale. There is no reference whatever to Warren nor his map.

As a matter of fact, this map was a purely private document and was not even recorded. No copy of this map was ever filed in the chancery clerk's office until after the tax sale.

Furthermore, under the assessment in this case there was no designation of the owner, the lot being assessed "unknown;" and there was no statement of the number of lots in the quarter

of the quarter section except in so far as a proposing purchaser might infer that since this lot was numbered seventeen, there were as many as seventeen lots in the sixteenth of the section.

It is claimed that this assessment is good under Code 1892, § 3774, which provides that, "Lands not surveyed according to the plan of the government survey, shall be assessed by the designated used on the government maps or by other descriptions or names by which they may be distinguished. And if parts of such lands shall be owned by different persons, such parts shall be referred to by quantity and such short memorandum as may be convenient to show the locality."

The trouble about this paragraph is that these lands were surveyed according to the plan of the government surveys and were not within that provision. There is found in it no authority whatever for the taking of a piece of land that has been surveyed according to the plan of the government surveys, then resurveying the same, dividing it up into one acre lots, and having an assessment made on the tax rolls by reference to the numbers of those of single acre lots, and by number alone, without designating the size of the lot or the corner of the lot, or giving hint whatever as to the authority for that designation, or where may be found any map or descriptive list that will put the purchaser on information as to what is offered at the sale.

If such a process is allowed as was followed here, the whole fiscal system of the state, so far as the assessment of lands for taxes is concerned, will be thrown into inextricable confusion. The tax rolls will then not describe the lands taxed; and such lands will not be described even by tax rolls plus any form of public record.

It will be remembered that this unofficial private map is not only not referred to on the roll, but even if it had been referred to, was not accessible because it was not recorded or on file, but was in private keeping.

Complainant below attempted to avoid these suggestions by

proving that in this particular instance he himself would have had no difficulty in finding Lot 17 and of proving that Hartman knew that his lot was described as "seventeen," etc.; but all of this is beside the case.

In the first place, the question as to whether this is an assessment void on its face, is a general question, and is not to be determined by reference to the particular instance. It is a question of public policy; and a quetion of the requirements of the statutes.

The court will further remember that this is not one of those instances in which within an incorporated town the statute authorizes an assessment to be made by proper lots in further subdivision of the government survey numbers; the statute makes provision for a case of that sort, but the very fact that the statute does make provision for such a designation of lots by their numbers within the limits of an incorporated town, furnishes still a further argument that no such scheme is contemplated outside of the towns. This subdivision was adjacent to the city of Brookhaven, but it was not a part of the city of Brookhaven. It was called Petersburg, but that was a mere designation of a settlement, and Petersburg is a thing not known to the law.

It needs but little reflection to see how necessary it is that in making the assessment rolls, especially outside of the corporate limits of towns and cities, the assessor shall so make up his rolls as that a person who understands anything about round numbers and round subdivisions, can go through those rolls and see that all of the land is assessed. That is one of the duties of the board of supervisors.

But if private individuals are allowed to take quarter sections and subdivide the same into an arbitrary number of small lots, then withhold their subdivision maps from record; and then if the tax assessor is allowed to make assessments with no other designations than a reference to a lot number on these unofficial and unrecorded maps, our land system will be a pretty kettle of fish.

There are more reasons than one, therefore, why this assessment was void. We emphasize the point of public policy as indicated in the statutory scheme; we also emphasize the fact that it is a general principle that every assessment must be so made as that the bidders at the tax sale shall know what they are offered; and if the assessment does not give them the definite and direct information, at least that it must contain within itself the clew to further definite information. This assessment did neither, and it was void. The description did not set forth the items, or any of them, required by the relaxed rule of Sec. 3775.

This court has settled the proposition that an insufficient description of land on the assessment roll cannot be aided by extrinsic evidence unless the roll itself furnishes the clew. This is a constitutional requirement which could not have been dispensed with by legislation. *Sims* v. *Warren*, 68 Miss., 447, 10 South., 40.

It has also settled the proposition that where mere perusal of the instrument shows that the description used cannot have effect unless aided by extrinsic evidence, the ambiguity is patent and cannot be aided by parol evidence. *Haughton* v. *Sartor*, 71 Miss., 357, 15 South., 71; *Bowers* v. *Andrews*, 52 Miss., 596; *Dodds* v. *Marx*, 63 Miss., 443; *Cogburn* v. *Hunt*, 54 Miss., 675; *McQueen* v. *Bush*, 76 Miss., 283, 24 South., 196; *Crawford* v. *McLaurin*, 83 Miss., 265, 35 South., 209, 949; *Smith* v. *Brothers*, 86 Miss., 241, 38 South., 353.

CALHOON, J., delivered the opinion of the court.

The land was in the country and subject to government survey. The assessment and the tax collector's conveyance were of "lot 17, in S. E. ¼ of S. W. ¼, section 18, township 7, range 8 east." This description is of property unknown to the governmental surveys or maps. It is shown that it was not within any municipal corporation and it is shown that no such lot or description of property was of record in any public office. At the

time of the sale, and at the expiration of the day for redemption, the sheriff certainly could not have found any such property. The tax collector's conveyance furnishes no pointer by which any person could have found the land. It turns out, as a matter of fact, that a private individual had platted for his own private purposes this property out of his own land, or what he thought was his own land. This was absolutely unknown to the owner, and it was never placed upon record until after the impetration of these proceedings.

*Affirmed.*